# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTIN MERCK, | : | 3:12cv1843 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
|   v. | : | |
| | : | |
| CAROLYN W. COLVIN,[1] | : | |
| Commissioner of Social Security, | : | |
|     Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is Plaintiff Martin Merck's (hereinafter "Merck") appeal of the Defendant Commissioner of Social Security's (hereinafter "Commissioner") denial of his application for disability insurance and supplemental security income benefits.[2] (Doc. 1).

---

[1] When Merck filed this action, Michael J. Astrue was the Commissioner of Social Security. Accordingly, Merck named him as the defendant in his official capacity. Since then, however, Astrue left his position as Commissioner. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. See OFFICIAL SOCIAL SECURITY WEBSITE, http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm (last accessed Dec. 13, 2013). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.")

[2] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. 42 U.S.C. §§ 415(a) and 416(i)(1). The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." See 42 U.S.C. § 416(i)(2). Here, the record

**Background**

On February 13, 2009, Merck filed applications for disability insurance and supplemental security income (hereinafter "SSI") benefits due to musculoskeletal and chest pain. (Doc. 6, Admin. R. (hereinafter "R.") at 32-33, 37).[3] In both applications, Merck alleges his disability began on September 30, 2008. (Id.) On January 12, 2010, the Bureau of Disability Determination denied Merck's applications.[4] (Id.) Merck then filed a request for a hearing before an administrative law judge (hereinafter "ALJ").

The ALJ held a hearing on March 14, 2011. (Id. at 9-30). At the hearing, the ALJ noted that Merck was forty-eight (48) years old with limited education. (Id. at 13-14, 24). Merck completed the eleventh grade of high school and can read, write, speak and understand the English language and

---

establishes that Merck met the Social Security Act's insured status requirement. (R. at 39).

Supplemental security income (hereinafter "SSI") is a federal income supplement program funded by general tax revenues (not social security taxes). 42 U.S.C. § 1381. It is designed to help the aged, blind or disabled individuals who have little or no income. 42 U.S.C. § 1381a. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits. 42 U.S.C. § 1382.

[3] References to "R. at __" are to pages of the administrative record filed by the Defendant as part of his Answer on July 11, 2012.

[4] The Bureau of Disability Determination is an agency of the state that initially evaluates applications for disability insurance and SSI benefits on behalf of the Social Security Administration. (R. at 88-98).

perform basic mathematical functions. (Id. at 14-15). After withdrawing from school, Merck failed to obtain a General Equivalence Diploma or complete any type of job training. (Id. at 14).

Merck testified that he has pain in his low back, neck, thighs and testicles, but stated that his medications are effective in reducing and controlling his symptoms. (Id. at 20-23). Merck can cook and clean in short intervals and can walk fifty feet before pain from his waist and breathing difficulties cause him to sit down. (Id. at 19, 21-23). Merck also testified that he lives alone in a one-story home, does his own shopping and meets his own personal care. (Id. at 17-18, 21-22). He enjoys reading Sports Illustrated magazines and watching the television. (Id. at 17-18).

At the hearing, the vocational expert also stated that Merck has past relevant work as an insulation installer, paddle maker, press operator, ripsaw operator and stock clerk.[5] These positions are described as heavy, medium or light work.[6] Although Merck claims to have stopped working on September

---

[5] "Past relevant work" means work Merck performed during the fifteen years prior to the date his claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560(b)(1) and 404.1565.

[6] The terms light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may

3

30, 2008 due to a disability, Merck indicated on his disability report form that his employer fired him after he had been out of work on a separate worker's compensation claim pertaining to his wrist. (Id. at 154).

On June 20, 2011, the ALJ issued a decision denying Merck's application for disability and SSI benefits finding that Merck does not have an impairment or combination of impairments that has significantly limited his ability to perform basic work-related activities for twelve (12) consecutive months. (Id. at 40). Merck timely requested the Appeals Council review the

---

> be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
>
> (c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.
>
> (d) Heavy work. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

ALJ's decision. (Id. at 7-8). On July 25, 2012, the Appeals Council denied Merck's request for review. (Id. at 1-4). Thus, the ALJ's decision stood as the Commissioner's final decision.[7] As a result of the Commissioner's denial of disability insurance and SSI benefits, Merck filed an appeal in this court on September 14, 2012.[8] The parties then briefed the issues bringing the appeal to its present posture.

**Jurisdiction**

The court has federal question jurisdiction over this Social Security Administration appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to

---

[7] The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless a claimant files an action in federal district court within 60 days after receiving notice of the Appeals Council's action. 20 C.F.R. § 404.981.

[8] Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." L.R. 83.40.1.

which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**Standard of Review**

In reviewing a social security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). The Third Circuit Court of Appeals has explained that "substantial evidence has been defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'" Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)

(stating that courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.2001) (indicating that when an ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

Another critical requirement is that the Commissioner adequately develop the record. Poulous v. Comm'r of Soc. Sec., 474 F.3d 88, 95 (3d Cir. 2007) (reminding ALJs of their duty to develop the record); Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (stating that ALJs have an affirmative duty to develop a full and fair record in social security cases). If the record is not adequately developed, remand for further proceedings is appropriate. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any **substantial gainful activity** by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates disability insurance and supplemental security income claims with a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). This analysis requires the Commissioner

to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[9] (2) has an impairment, or combination of impairments, that is severe,[10] (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment,"[11] (4) has the "residual

---

[9] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510 and 416.910. If the claimant is engaging in "substantial gainful activity", the claimant is not disabled and the sequential evaluation proceeds no further.

[10] A "severe impairment" significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic physical work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl and handle. 20 C.F.R. § 404.1545(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

The determination of whether a claimant has any severe impairments that has lasted or is expected to last for a continuous period of at least twelve (12) months, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1509, 404.1520(c) and 416.920(c). If a claimant does not have any severe impairment or combination of impairments which significantly limits his physical or mental abilities to perform basic work activities that has lasted or is expected to last for a continuous period of at least twelve (12) months, the claimant is "not disabled" and the evaluation process ends at step two. Id.

If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2).

[11] A "listed impairment" is one that appears on the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe

functional capacity" to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). Prior to addressing step four, the ALJ must determine the claimant's residual functional capacity.[12] 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See SSR 96-8p, 1996 WL 374184.[13] A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. Id. The residual

---

enough to preclude any gainful work." Sullivan v. Zebley, 493 U.S. 521, 525 (1990); see 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments). If the claimant has an impairment, or combination of impairments, that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

[12] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

[13] Social Security Rulings (hereinafter "SSR") constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations. Molina v. Astrue, 674 F.3d 1104, 1113 n.5 (9th Cir. 2012); Lauer v. Apfel, 169 F.3d 489, 492 (7th Cir. 1999). SSRs do not have the force of law, id.; nevertheless, once published, they are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); Boone v. Barnhart, 353 F.3d 203, 210 n.16 (3d Cir. 2003); 20 C.F.R. § 402.35(b)(1).

10

functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Fargnoli, 247 F.3d at 40 (defining residual functional capacity as that which an individual is still able to do despite the limitations caused by his or her impairment(s)).

**Discussion**

Based upon the medical records and testimony, the ALJ at step one of the sequential evaluation found that Merck has not engaged in substantial gainful activity since June 30, 2008. (R. at 39). At step two, the ALJ found that Merck had the medically determinable impairments of chronic obstructive pulmonary disease (hereinafter "COPD"), but that such impairment caused no more than the minimal functional limitations and, therefore, was not severe within the meaning of the Social Security Regulations.[14] (R. at 39-46); 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c) and 416.921. As such, the ALJ determined that Merck was not disabled within the meaning of the Social Security Act.

---

[14] The ALJ also determined that Merck had the following non severe medically determinable impairments: pain and or numbness in the inguinal region/groin/testicular pain or cancer with metastasis to the lungs, status post bilateral inguinal hernias, mild obstructive lung disease, mild degenerative disc disease/degenerative joint disease of the lumbar and cervical spine, status post knee surgery, status post right carpel tunnel release, hypertension and hyperlipemia. (R. at 39-40). Merck has not appealed the ALJ's determination regarding these impairments. Ergo, the court will not address them.

The primary issue in this appeal, therefore, is whether substantial evidence supports the ALJ's finding that Merck's COPD is not a severe impairment that has lasted or is expected to last for a continuous period of at least twelve (12) months.[15] Merck contends that the objective medical evidence establishes that he has severe COPD that significantly limits his physical or mental ability to perform basic work activities.[16] The Commissioner argues that Merck's COPD is not severe because it did not cause any significant functional limitations. After careful consideration, the court agrees with the Commissioner.

To qualify for disability at step two, the claimant must have a severe impairment "which significantly limits [the claimant's] physical or mental ability

---

[15] Merck did not allege a breathing impairment when filing for disability insurance and SSI benefits. (R. at 86). The ALJ, however, adequately developed Merck's COPD allegations at the administrative hearing. (R. at 18-20, 22-23).

[16] Merck argues that the ALJ's analysis of his breathing impairment is flawed because the ALJ discusses his COPD but fails to address his emphysema. This contention lacks merit for two reasons. First, emphysema is the main type of COPD, therefore, the ALJ's discussion of COPD necessarily incorporates a discussion of his emphysema. See WEBMD, http://www.webmd.com/lung/emphysema-directory (last accessed Dec. 13, 2013). Second, the impetus of a step two analysis is determining whether Merck has a severe impairment and not whether Merck has a diagnosis. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

to do basic work activities[.]"[17] 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'" Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003) (quoting SSR 85-28, 1985 WL 56856, at *4).[18] "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits at step two." Id. (quoting Bowen v. Yuckert, 482 U.S. 137, 158, (1987) (O'Connor, J., concurring)). "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." Newell, 347 F.3d at 546-47 (citation omitted). "Reasonable doubts on severity are to be

---

[17] The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs" providing the following examples: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521 and 416.921.

[18] SSR 85-28 states that "[g]reat care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued." 1985 WL 56856, at *4.

resolved in favor of the claimant." Id. at 547.

At step two, the ALJ found that Merck's COPD was non severe for three reasons. First, the objective medical evidence failed to establish that a treating physician limited Merck's functioning because of his breathing impairment. (R. at 43). Second, Merck failed to undergo a pulmonary study to verify the severity of his COPD. (Id. at 20). Third, Merck stated that his use of inhalers were "effective" to control his COPD. (Id.)

In the instant case, a review of the objective medical evidence supports the ALJ's determination. In October 2009, Merck treated with doctors at Wayne Memorial Hospital for chest pain and shortness of breath. (R. at 330, 355-56, 578, 822). On examination, Merck's lungs were clear and negative for any pulmonary condition. (R. at 355-56). An x-ray revealed COPD changes in his lungs but no evidence of a collapsed lung or buildup of fluid around the lung. (R. at 330, 578, 822). Furthermore, the blood vessels between Merck's heart and lungs were operating normally. (Id.) Merck was declared stable and discharged without functional limitations. (R. at 335).

Wayne Memorial also treated Merck in November 2009. X-rays confirmed that Merck had lung changes consistent with COPD, but Merck did not have a collapsed lung or buildup of fluid around the lung. (R. at 517, 523-24, 536, 807, 819). Once again, Merck was declared stable and discharged without functional limitations. (R. at 584).

Merck was next treated for chest pains and shortness of breath in March 2010. X-rays established that fluid was not building up in Merck's lungs, but his COPD was possibly exhibiting mild changes. (R. at 490, 808). Additionally, Merck's chest was tender to the touch and the doctor heard wheezing sounds emanating from Merck's chest. (R. at 500). Merck's condition improved after treatment with an inhaler and he was discharged without any functional limitations. (R. at 490, 501, 808).

Finally, Merck was seen twice at Wayne Memorial Hospital in September 2010. (R. at 800-01). During these visits, the doctors reported that Merck's lungs were clear. (Id.) X-rays also failed to reveal a collapsed lung or buildup of fluid around the lung. (Id.) Merck was once again discharged without functional limitations. (Id.)

In short, the objective medical evidence supports the ALJ's determination that Merck's COPD failed to have any more than a minimal effect on Merck's ability to work. Newell, 347 F.3d at 546. Physicians treated Merck on five separate occasions between October 2009 and September 2010 for chest pain and shortness of breath. On each occasion, Merck was discharged without any functional limitations and advised to treat with an inhaler. (R. at 335, 584, 490, 501, 800-01, 808). Moreover, Merck admitted he had never undergone a full pulmonary study, which may have bolstered his allegations of functional limitation. (R. at 20). Therefore, the court finds

that substantial evidence supports the ALJ's finding that Merck's COPD did not cause functional limitations that lasted or were expected to last twelve (12) months. Accordingly, the Social Security regulations required the ALJ to find Merck not disabled.[19] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

**Conclusion**

For the reasons stated above, the court finds that substantial evidence supports the Commissioner's decision. Ergo, pursuant to 42 U.S.C. 405(g), the court will affirm the Commissioner's decision. An appropriate order follows.

**Date:   12/13/13**                             **s/ James M. Munley**
                                                 **JUDGE JAMES M. MUNLEY**
                                                 **United States District Court**

---

[19] The court also finds no merit to Merck's claim that the ALJ failed to fully consider his allegations of pain. The ALJ discussed Merck's symptoms and concluded that Merck's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible. (R. at 41-43). After careful review, the court finds that the objective medical evidence contained within the discussion section of this memorandum supports the ALJ's pain determination.